Filed 7/24/13  P. v. Williams CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B240665 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA386991) |
| v. | |
| MALI WENDELL WILLIAMS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Dennis J. Landin, Judge.  Affirmed as modified.

Law Offices of Russell S. Babcock and Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant Mali Wendell Williams.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant and appellant Mali Wendell Williams of attempted kidnapping to commit robbery, attempted second degree robbery, and illegal possession of a firearm by a person who was adjudged a ward of the juvenile court. On appeal, defendant contends: (1) insufficient evidence supported the attempted kidnapping for robbery convictions; (2) the trial court erred in failing to sua sponte instruct the jury on an abandonment defense; (3) the trial court erred in using the dictionary definition of a term in the kidnapping for robbery jury instruction; (4) the trial court erred in denying his motion to sever the illegal possession of a firearm count; and (5) the trial court should have stayed sentences on two counts. We modify the judgment to correct the sentencing error and otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Kidnapping/Robbery Incident*

In the early morning hours of July 12, 2011, Christina B. and Alex Feliciano arrived at their Los Angeles apartment in a rented truck. They double parked the truck outside to take items upstairs to their second floor apartment, then returned downstairs. When Feliciano went to the rear of the truck someone knocked Christina to the ground. Christina turned, saw a woman behind her, and screamed. A man put a gun to the back of Feliciano's head. The man told Feliciano: "Give it up. I know you got it. Where's it at?" Feliciano understood his assailant to mean money or valuables. The man searched Feliciano's pockets and the truck. The woman went through Christina's pockets and took her keys. The woman told Christina to "start moving." The man and woman directed Christina and Feliciano to the front of the apartment complex, then up the stairs to their apartment. At the front door of the apartment, the man asked where the keys were, and said: "We're going to get in." The man wanted to take a chain Feliciano was wearing; Feliciano tried to convince him not to. The woman appeared to grow nervous and wanted to leave. She told the man: "We need to leave," or "we need to go."

Eventually the man and woman left. Feliciano yelled after them, asking them to leave the keys. The woman dropped the keys on the ground. Feliciano and Christina called the police and searched for the keys in grass near the apartment. They found the

2

keys and a cell phone.  When they looked through the content on the phone, they saw a picture of their male assailant, in which he wore the same black and white striped sweater or sweatshirt he was wearing during the incident.

At a preliminary hearing, Feliciano testified he was not 100 percent sure Williams was his attacker.  However, he was 100 percent sure the man in the picture on the phone was his attacker.  At trial, Feliciano and Christina identified Williams as their attacker.

### *Illegal Firearm Incident*

On November 23, 2011, Los Angeles Police Officer John Carlyle responded to a call about an unauthorized party at a hotel.  As Carlyle approached the party, people began leaving.  Carlyle saw Williams remove a small black semiautomatic weapon from his waistband.  Williams took a red purse from the hand of a woman in front of him and put the firearm inside the purse.  Williams then put his left arm against the woman and pushed her through the crowd while he held the purse in his right hand.  They walked toward Carlyle and his partner.  Carlyle attempted to make contact with Williams.  Williams pushed the woman into Carlyle and tried to jump between a guardrail and the woman to get past.  Carlyle grabbed Williams and kicked the purse out of Williams's hand.  Inside the purse, Carlyle found a black semiautomatic weapon.

The People initially charged Williams with two counts of aggravated kidnapping (Pen. Code, § 209, subd. (b)(1); counts 1 & 2), one count of attempted second degree robbery (Pen. Code, §§ 664, 211; count 3), one count of second degree robbery (Pen. Code, § 211; count 4), and one count of unlawful firearm activity in violation of former Penal Code section 12021, subdivision (e) (count 5).  The court denied Williams's motion to sever count 5.  Williams also moved to dismiss counts 1 and 2, arguing there was insufficient evidence of a kidnapping.  The trial court agreed. The prosecution then sought leave to amend counts 1 and 2 to charge attempted aggravated kidnapping.  The court allowed the amendment.  Before the case was submitted to the jury, the court also allowed the People to amend count 4 to allege attempted second degree robbery.

3

At trial, Williams offered alibi evidence through the testimony of his grandmother and his pregnant girlfriend. Williams also offered the testimony of an expert on factors affecting the reliability of eyewitness identifications and memory.

The jury found Williams guilty on all counts. On the first four counts, the jury found true an allegation that Williams personally used a firearm within the meaning of section 12022.53, subdivision (b). Williams admitted a prior strike. The trial court sentenced Williams to a total prison term of 21 years and four months.

## DISCUSSION

### I. Sufficient Evidence Supported the Attempted Aggravated Kidnapping Convictions

Williams first contends his conviction for attempted aggravated kidnapping was not supported by sufficient evidence. We disagree.

" 'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." [Citation.]' [Citation.]" (*People v. Wilson* (2010) 186 Cal.App.4th 789, 805.) We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*People v. Virgil* (2011) 51 Cal.4th 1210, 1263.)

Penal Code section 209, subdivision (b)(1), sets forth criminal punishment for "[a]ny person who kidnaps or carries away any individual to commit robbery. . . ." The subdivision "shall only apply if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense." (§ 209, subd. (b)(2).) The statute codified the holding of *People v. Daniels* (1969) 71 Cal.2d 1119, 1139

4

(*Daniels*).[1] A defendant may be convicted of attempted kidnapping for robbery. (*People v. Mullins* (1992) 6 Cal.App.4th 1216, 1219.) "To convict, the fact finder must find beyond a reasonable doubt that the defendant had the specific intent required for kidnapping to commit robbery and that the movement, if completed as the defendant intended, would have been more than merely incidental to the underlying crime of robbery and would have substantially increased the risk of harm over and above that necessarily present in the robbery." (*Id.* at p. 1221.)

The evidence was sufficient to allow the jury to conclude Williams's intended movement would have satisfied both aspects of Penal Code section 209, subdivision (b)(1). To determine whether the movement was more than merely incidental to the robbery, "the jury considers the 'scope and nature' of the movement, which includes the actual distance a victim is moved. [Citations.] There is, however, no minimum distance a defendant must move a victim to satisfy the first prong." (*People v. Vines* (2011) 51 Cal.4th 830, 870 (*Vines*).) "We also consider the 'context of the environment in which the movement occurred.' [Citation.] 'This standard suggests a multifaceted, qualitative evaluation rather than a simple quantitative assessment.' [Citation.]" (*People v. Leavel* (2012) 203 Cal.App.4th 823, 833 (*Leavel*).)

Whether a defendant's movement of the victims increased the risk of harm to them above and beyond that inherent in the robbery " ' "includes consideration of such factors as the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes. [Citations.]" ' " (*Vines, supra,* 51 Cal.4th at p. 870.) "The two prongs [of section 209, subdivision (b)(2)] 'are not mutually exclusive but are interrelated.' [Citation.] Whether a victim's forced movement was merely incidental to the robbery 'is necessarily connected to whether it substantially increased the risk to the victim.' [Citation.] '[E]ach

---

[1] Under *Daniels*, the movement had to substantially increase the risk of harm to the victim. In 1997, the Legislature revised section 209 and eliminated the requirement that there be a *substantial* increase in the risk of harm. (*People v. Robertson* (2012) 208 Cal.App.4th 965, 980-981.)

case must be considered in the context of the totality of its circumstances.' [Citation.]" (*Leavel, supra,* 203 Cal.App.4th at p. 834.)

Here, there was evidence Williams moved Feliciano and Christina away from their truck, out of the street, through an apartment courtyard, and up a flight of stairs. There was also evidence Williams intended to move them farther, from the street outside to inside the apartment. The jury could consider this intended movement substantial, and even unnecessary to facilitate the robbery. (*People v. Ellis* (1971) 15 Cal.App.3d 66, 72-74 (*Ellis*) [victims confronted on street, forced upstairs into apartments and robbed; movement satisfied *Daniels* test].) Williams had an accomplice, a weapon, and keys to the apartment. He could have kept Feliciano and Christina outside in the street, while the accomplice went inside the apartment alone. Movement unnecessary to a robbery is not merely incidental to it. (*Leavel, supra,* 203 Cal.App.4th at p. 835; *People v. James* (2007) 148 Cal.App.4th 446, 454-455 (*James*).)

Further, the jury could reasonably conclude Williams's intended movement of Feliciano and Christina inside the apartment would have increased the risk of harm to them. The jury could find that moving Feliciano and Christina inside would have placed them at an increased risk of being physically assaulted or otherwise harmed, with less risk of detection from a passerby. Moving them into the apartment from the street also would have allowed less opportunity for either of them to escape, and increased the risk of harm should either attempt to flee. (*Vines, supra,* 51 Cal.4th at p. 871; *James, supra,* 148 Cal.App.4th at pp. 456, 457-458 [no rigid indoor-outdoor rule, but it is often held that defendants who moved their victims to more secluded or enclosed areas increased the risk of harm]; *Ellis, supra,* 15 Cal.App.3d at p. 73.)

We reject Williams's principal contention that no evidence established Williams intended to move Feliciano and Christina into the apartment.[2] The incident began at

---

[2]    On appeal, Williams asserts he "does not concede that if [he] had brought Feliciano and Christina into their apartment, he necessarily would have been guilty of kidnapping for robbery. . . .  Nevertheless, for the purposes of Argument I, appellant shall assume that the jury could have convicted appellant of kidnapping for robbery if the

Feliciano and Christina's truck on the street. Williams and his accomplice moved the victims, with coercion, to the front door of their apartment. At the door, defendant said: "Where is the keys at? We're going to get in." Christina testified that at the door, Williams and the accomplice "were trying to get us to – let them into the apartment." Although Christina did not testify to the words exchanged, she permissibly testified about her understanding of what Williams and the accomplice were communicating to her, with words or otherwise. This was substantial evidence that Williams's goal was to force Feliciano and Christina into the apartment. Indeed, the jury could reasonably infer Williams did not move Feliciano and Christina into the apartment only because his accomplice was nervous and stopped cooperating. (*People v. Medina* (2007) 41 Cal.4th 685, 699 (*Medina*).) This, combined with the other circumstances described above, was sufficient evidence for the jury to conclude Williams formed the specific intent to commit kidnapping for robbery.

There was also substantial evidence that Williams took a direct but ineffectual act toward committing kidnapping for robbery. (*People v. Toledo* (2001) 26 Cal.4th 221, 229-230; *People v. Mullins, supra,* 6 Cal.App.4th at pp. 1220-1221.) After failing to find anything on Feliciano and Christina in the street, he forced them up the stairs to the front door of their apartment while holding a gun, he said he would "get in," and asked where the keys were. They stood at the door for several minutes, while Williams spoke with Feliciano and tried to get his chain. The accomplice was nervous and told Williams they needed to leave. While Williams did not put the keys into the lock of the apartment door, the jury could reasonably find his actions prior to leaving the scene went beyond mere preparation, and were direct but ultimately ineffectual acts in furtherance of a kidnapping for robbery. (*Medina, supra,* 41 Cal.4th at p. 699; *Toledo, supra,* 26 Cal.4th at p. 230.)

prosecution had presented substantial evidence of both appellant's specific intent to bring Feliciano and Christina into their apartment and a direct, but ineffectual, step by appellant to effectuate his intent." Aside from asserting no evidence supported a conclusion that Williams intended to take his victims into the apartment, Williams does not otherwise argue the evidence was insufficient to support the convictions.

7

Considering the totality of the circumstances, and viewing the evidence in the light most favorable to the judgment, we conclude substantial evidence supported the attempted kidnapping for robbery convictions. (*People v. Corcoran* (2006) 143 Cal.App.4th 272, 280.)

## II.     Any Instructional Error Was Harmless

The trial court instructed the jury with CALCRIM No. 1203 on kidnapping for robbery as follows, in relevant part: "To prove the crime of kidnapping for the purpose of robbery, the People must prove that the defendant intended to commit robbery, number two, acting with that intent, the defendant took, held or detained another person by using force or by instilling a reasonable fear, number three, using that force or fear, the defendant moved the other person a substantial distance, number four, the other person was moved or made to move a distance beyond that is merely incidental to the commission of a robbery, number five, when that movement began, the defendant already intended to commit robbery, and number six, the other person did not [consent] to the movement. [¶] As used here, substantial distance means more than a slight or trivial distance. The movement must have substantially increased the harm to the person beyond that necessarily present in the robbery. In deciding whether the movement was sufficient, consider all the circumstances relating to the movement."

During deliberations, the jury sent out the question: " 'The jury would like a definition of quote 'incidental,' as it relates to the definition of 1203: kidnapping for robbery.' " The court suggested to the parties that it respond with a partial dictionary definition: " 'Happening as a chance or undersigned feature of something; casual hence minor of secondary importance.'" After proposing this dictionary definition, the court asked counsel if there were objections. Defense counsel asked if there were additional definitions. The court read a second definition: " 'Liable to happen or to follow as a chance feature or incident.' " Defense counsel said he felt the first definition was appropriate. The prosecutor agreed.

Williams now contends "incidental" is a legal term of art and the court's definition was an incorrect statement of law. He asserts the court should have "devised" a definition that instructed the jury to consider whether the movement was for a substantial distance and substantially increased the risk of harm. We initially note Williams has forfeited any claim of error. At trial, defense counsel indicated it felt the first dictionary definition of incidental was appropriate, did not object to the use of a dictionary definition, and in fact assented. Thus, Williams's claim of error is forfeited. (*People v. Davis* (2009) 46 Cal.4th 539, 616-617 [defendant forfeited claim that court erred in using legal dictionary definition of "incidental" instead of ordinary dictionary where defense counsel said common dictionary meaning would not be helpful, assented to use of legal dictionary definition, and did not renew request for pinpoint instruction].)

Forfeiture aside, we conclude any error was harmless beyond a reasonable doubt. Several cases have criticized or rejected dictionary definitions of "incidental" as either too narrow, too broad, or otherwise inconsistent with the term "beyond merely incidental" as used in *Daniels*. (*In re Earley* (1975) 14 Cal.3d 122, 130, fn. 11 (*Earley*) [dictionary definition of incidental as nonessential not the sense in which the word incidental was used in *Daniels*]); *Ellis, supra,*15 Cal.App.3d at p. 68 [dictionary definition of incidental too broad to define the word as used in *Daniels*]; *People v. Williams* (1970) 2 Cal.3d 894, 902 [Attorney General reliance on dictionary definitions of incidental criticized; meaning of "beyond merely incidental" not as narrow as suggested].) However, in *Earley*, the court concluded: "Brief movements to facilitate robbery . . . are incidental thereto within the meaning of Daniels . . . . On the other hand movements to facilitate [robbery] . . . that are for a substantial distance rather than brief are not incidental thereto within the meaning of *Daniels*." (*Earley, supra,* 14 Cal.3d at pp. 129-130.) In that case, because the movement was substantial – 10 to 13 blocks – "it was not 'merely incidental to the commission of the robbery' [citation], even though it

may have been solely to facilitate the commission of the robbery."[3]  (*Id.* at p. 130, fn. omitted; *James, supra,* 148 Cal.App.4th at p. 454.)

Williams does not suggest how the jury in this case might have understood the dictionary definition of incidental in the context of the instruction.[4]  But any error in the use of the definition was harmless, under any standard, because the remaining portions of the instruction required the jury to find the movement was not merely incidental to the robbery in order to convict.  (*People v. Rogers* (2006) 39 Cal.4th 826, 873-875; *People v. Hughes* (2002) 27 Cal.4th 287, 352.)  Specifically, the instruction required the jury to conclude the People proved the defendant moved the victim a "substantial distance."  The instruction subsequently defined "substantial distance" as more than slight or trivial.  Under *Earley,* movements to facilitate a robbery that are for a "substantial distance" are *not* merely incidental to the robbery, even if they also facilitate the robbery.

The instruction also required the jury to find the movement increased the risk of harm to the victim, and it directed the jury to consider all the circumstances relating to the movement.  These portions of the instruction required the jury to make the necessary findings to satisfy both prongs of the *Daniels* standard, and were consistent with the case law interpreting Penal Code section 209, subdivision (b)(2).  (See *Vines, supra,* 51 Cal.4th at p. 870.)  Even if confusing, the "merely incidental" portion of the instruction did not relieve the jury of making other findings pursuant to the rest of the instruction.

---

[3]  As noted above, other cases have concluded movement *unnecessary* to the target offense, or that does not facilitate the offense, is not "merely incidental" to the offense. (*Leavel, supra,* 203 Cal.App.4th at p. 835; *James, supra,* 148 Cal.App.4th at p. 455; *People v. Corcoran, supra,* 143 Cal.App.4th at pp. 279-280.)

[4]  With the definition, the fourth prong of the instruction would essentially have been:  The People must prove the other person was moved or made to move a distance beyond that merely incidental [i.e., happening as a chance or undersigned feature of something; casual hence minor of secondary importance] to the commission of a robbery.

10

When considering a claim that an instruction was subject to an incorrect interpretation, we look at the instructions as a whole to determine whether it is reasonably likely they caused the jury to misapply the law. (*People v. Solomon* (2010) 49 Cal.4th 792, 822; *People v. Carrington* (2009) 47 Cal.4th 145, 192.) Given the instructions as a whole, even if the trial court's definition of "incidental" was incorrect, the error could not have contributed to the verdict. (*People v. Sakarias* (2000) 22 Cal.4th 596, 625.) The "substantial distance" portion of the instruction adequately instructed the jury on the interrelated requirements that the movement be not merely incidental to the robbery, and that it increase the risk of harm to the victims beyond that necessarily present in a robbery. We find no basis for reversal in the court's definition of "incidental."

III.    **The Trial Court Did Not Err in Failing to Sua Sponte Instruct on an Abandonment Defense**

We also reject Williams's contention that the trial court should have sua sponte instructed on an abandonment defense.[5] "In the absence of a request for a particular instruction, a trial court's obligation to instruct on a particular defense arises ' "only if [1] it appears that the defendant is relying on such a defense, or [2] if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case." ' [Citations.]" (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1148.) Here, Williams relied on an alibi theory. Further, in his closing argument, defense counsel argued the prosecutor had not established Williams ever intended to kidnap the victims, not that he abandoned his efforts before making an overt act in furtherance of the crime.

---

[5]    Williams argues the court should have included the following bracketed portion of CALCRIM No. 460: "A person who attempts to commit [kidnapping for robbery] is guilty of attempted [kidnapping for robbery] even if, after taking a direct step towards committing the crime, he or she abandoned further efforts to complete the crime or if his or her attempt failed or was interrupted by someone or something beyond his or her control. On the other hand, if a person freely and voluntarily abandons his or her plans before taking a direct step toward committing [kidnapping for robbery], then that person is not guilty of attempted [kidnapping for robbery]."

11

Moreover, there was no substantial evidence to support an abandonment defense. Once a defendant's actions have "reached such a stage of advancement that they can be classified as an attempt . . . there can be no exculpatory abandonment." (*People v. Staples* (1970) 6 Cal.App.3d 61, 69.) The uncontradicted evidence was that Williams did not stop in his efforts until he and his accomplice were at the front door of the apartment, after having accosted the victims with a gun in the street, forcing them through the apartment courtyard and up a flight of stairs, and after he demanded keys and proclaimed they would get into the apartment. The evidence also strongly suggested the impediment to completing the planned crimes was Williams's accomplice, who was unwilling to proceed. Either the jury would believe this evidence and find him guilty of attempted kidnapping for robbery or attempted robbery, or they would find him not guilty. The evidence did not support a finding that Williams engaged in only mere preparation, then voluntarily abandoned his plans. (*People v. Crary* (1968) 265 Cal.App.2d 534, 540 [after intent has been formed and is coupled with an overt act toward the commission of the contemplated offense, abandonment of the criminal purpose will not constitute a defense to a charge of attempting to commit a crime].)

The trial court did not err in failing to sua sponte include the abandonment portion of CALCRIM No. 460.

## IV. The Trial Court Did Not Abuse its Discretion in Denying Williams's Severance Motion

We review a trial court's ruling on a severance motion for abuse of discretion. (*Vines, supra,* 51 Cal.4th at p. 855.) " ' " 'Refusal to sever may be an abuse of discretion where: (1) evidence on the crimes to be jointly tried would not be cross-admissible in separate trials; (2) certain of the charges are unusually likely to inflame the jury against the defendant; (3) a 'weak' case has been joined with a 'strong' case, or with another 'weak' case, so that the 'spillover' effect of aggregate evidence on several charges might well alter the outcome of some or all of the charges; and (4) any one of the charges carries the death penalty or joinder of them turns the matter into a capital case. [Citations.]' " ' [Citations.]" (*Ibid.*)

Under Penal Code section 954, an accusatory pleading may charge two or more different offenses of the same class of crimes or offenses under separate counts. Williams concedes the two charged incidents were of the same class of crimes, and that the threshold for joinder was met. However, he argues there was no cross-admissibility of evidence between the two incidents, and evidence concerning the firearm charge likely had a "prejudicial spillover effect." He asserts the evidence supporting the kidnapping for robbery charges was weak, and the evidence offered to prove the firearm charge constituted impermissible propensity evidence. Williams contends the failure to sever count five resulted in a fundamentally unfair trial. His arguments are unavailing.

The absence of cross-admissible of evidence does not, by itself, demonstrate prejudice when severance is not ordered. (*Vines, supra,* at p. 856; *People v. Soper* (2009) 45 Cal.4th 759,779-780 (*Soper*).) Thus, we consider the other factors mentioned above. The trial court could reasonably conclude there was little likelihood of "spillover" from linking a weak case with a stronger one. (*People v. Myles* (2012) 53 Cal.4th 1181, 1201.) Although Williams presented evidence intended to refute the eyewitness identifications in this case, the evidence indicating Williams was the assailant was strong. In addition to two eyewitness identifications, a telephone connected to Williams was recovered at the scene of the crime. The telephone contained a photograph depicting Williams wearing a sweater similar in pattern to the one the assailant wore during the incident. Williams's girlfriend's testimony that the phone belonged to her, but she had lost it, was of little help to defendant's case. The trial court could reasonably conclude the strength of the evidence supporting count 5 would simply have no effect on the jury's evaluation of the less certain aspects of the kidnapping for robbery charges, such as Williams's intent in moving the victims. Any difference in the strength of the evidence of the two crimes was minimal. "Furthermore, the benefits of joinder are not outweighed – and severance is not required – merely because properly joined charges might make it more difficult for a defendant to avoid conviction compared with his or her chances were the charges to be separately tried." (*Soper, supra,* 45 Cal.4th at p. 781.)

13

The trial court could also reasonably conclude none of the charges were unusually likely to inflame the jury against defendant.  The evidence offered in support of count 5 was brief and not unusually inflammatory.  The evidence came from the testimony of a single police officer who saw defendant in possession of a gun.  Williams attempted to evade police, but no one was injured, and the gun was not discharged.  There was no evidence offered suggesting Williams had used or intended to use the gun in any crime, other than the possession crime charged in the case.  As to the fourth factor, the joinder of charges did not result in a capital offense.  (*Myles, supra,* 53 Cal.4th at p. 1202.)

To establish error in the trial court's ruling denying his motion to sever the charges, defendant was required to make a " ' "clear showing of prejudice to establish that the trial court abused its discretion . . . ." ' [Citation.]  A trial court's denial of a motion to sever properly joined charged offenses amounts to a prejudicial abuse of discretion only if that ruling ' " ' " 'falls outside the bounds of reason.' " ' " ' [Citation.]" (*Soper, supra,* 45 Cal.4th at p. 774, italics omitted.)  Williams did not meet this burden here.

Last, the trial court's denial of severance did not result in actual unfairness so great that it denied Williams due process or deprived him of his right to a fair trial. (*Soper, supra,* 45 Cal.4th at p. 783; *People v. Cook* (2006) 39 Cal.4th 566, 583.)  As in *People v. Mendoza* (2000) 24 Cal.4th 130*,* "the consolidated offenses were factually separable.  Thus, there was a minimal risk of confusing the jury or of having the jury consider the commission of one of the joined crimes as evidence of defendant's commission of another of the joined crimes." (*Mendoza, supra,* 24 Cal.4th at p. 163; *Soper, supra,* 45 Cal.4th at p. 784.)  The prosecution did not suggest that evidence from one incident could be used to prove or strengthen the other incident.  There was no suggestion or implication that the gun in Williams's possession at the November 2011 incident was the same one used in the robbery of Christina and Feliciano.  The joint trial of all of the charges did not result in a grossly unfair trial.

**V.      No Cumulative Error**

We have identified no error that, alone or cumulatively, was prejudicial.
(*People v. Williams* (2013) 56 Cal.4th 165, 201.)

**VI.     The Trial Court Should Have Stayed the Sentences For Counts Three and Four**

We agree with the parties that the trial court should have stayed the sentences on count three (attempted second degree robbery of Feliciano) and count four (attempted second degree robbery of Christina), rather than imposing concurrent sentences on those counts.  At sentencing, the trial court determined section 654 applied to counts 3 and 4.  However, instead of imposing the sentences and staying their execution, the court imposed concurrent sentences.  This was error.  (*People v. Duff* (2010) 50 Cal.4th 787, 796; *People v. Alford* (2010) 180 Cal.App.4th 1463, 1472.)  We exercise our authority to modify the judgment so that the sentences on counts 3 and 4 are stayed.

**DISPOSITION**

The judgment is modified to stay the sentences on counts 3 and 4.  The trial court is directed to forward a new abstract of judgment reflecting this modification to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.




                                                    BIGELOW, P. J.

We concur:



          FLIER, J.



          GRIMES, J.


15